UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

REBECCA CLAY,

    Plaintiff,

v.

U-HAUL COMPANY OF
MASSACHUSETTS AND OHIO INC.,

    Defendant.

Case No. 2:18-cv-1050
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Defendant U-Haul Company of Massachusetts and Ohio Incorporated's, ("Defendant") Motion for Summary Judgment (ECF No. 26). Plaintiff Rebecca Clay ("Plaintiff") has responded (ECF No. 29) and Defendant has replied (ECF No. 30). Thus, the motion is ripe for review. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED** (ECF No. 26).

### I.

Defendant owns and rents to customers storage units located at 1921 Riverway Drive, Lancaster, Ohio 43130 (the "Lancaster Facility"). (Compl. ¶ 4, ECF No. 4.) Plaintiff has been Defendant's customer since May 9, 2017, when Plaintiff began renting a storage unit from Defendant in the Lancaster Facility. (*Id.*) This action arises out of Defendant's alleged negligence in failing "to provide adequate illumination throughout [Plaintiff's unit], including but not limited to within the interior of the unit[] in order to protect the health, safety and welfare of its tenants including Plaintiff." (Compl. ¶ 10.)

### A. The Lancaster Facility's Lighting

The Lancaster Facility has permanent lighting at the bottom of the stairs which lead to Plaintiff's unit. (Ferrando Dep. 102:11–14, ECF No. 29-1.) Additionally, there are lights suspended into the ceiling that are activated by motion sensors. (*Id.* at 21:4–8, 59:3–4.) The motion sensors are activated whenever movement is detected. (*Id.* at 102:1–22.) "[T]hey are designed to come on as you walk down the hallway," and "generally, a wave of the hand will turn [them] on." (*Id.* at 103:1–5.) When there is no motion, these lights stay on for about "[f]ive minutes and a few seconds.". (*Id.* at 59:15–21.) The individual storage units have no internal lighting that a tenant can control. (*Id.* at 21:1–4.) Additionally, there are no windows or skylights in the climate-controlled area. (*Id.* at 52:14–19.)

When a customer first rents a unit, one of Defendant's employees walks the customer to their unit and back. (*Id.* at 104:7–21.) During this process "the customer can [] see that there are []not lights that stay on for 24 hours. They know that they are on some type of motion detection." (*Id.* at 105:20–23.)

The General Manager of the facility periodically conducts walk-around inspections of the Lancaster Facility and visually inspects the lights. (*Id.* at 99:22–100:2.) If a light bulb requires replacement, the General Manager informs maintenance so that it is addressed. (*Id.* at 100:3–12.) The General Manager has never seen lights malfunction in any way during the seven years he has worked at the facility. (*Id.* at 98:1–99:10, 100:19–24.)

### B. Plaintiff's Experience Prior to February 5, 2018

Plaintiff used her unit to store equipment for her business. (Clay Dep. 27:16–21, ECF No. 29-1.) She manages a photo booth. (*Id.* at 16:11–15.) She kept her storage unit "pretty full." (*Id.* at 28:1–3.) Prior to February 5, 2018, Plaintiff had been to her unit approximately six times. (*Id.*

2

at 28:17.) She visited her unit to "get the items [she] would need for ... the event," that would use her photo both. (*Id.* at 28:18–22.) On these six prior occasions her daughter-in-law had always accompanied her. (*Id.* at 29:22.)

During these visits Plaintiff noticed that the lights did not always stay on. (*Id.* at 29:12–13.) She noticed the motion detection lights would dim and her daughter-in-law had to go into the hallway to wave her arms. (*Id.* at 29:15–30:2.) The lights would then come back on. (*Id.*) In these moments when the lights would go off it was "like dusk," and Plaintiff could still see. (*Id.* at 30:13–14.) Neither she nor her daughter had ever fallen on these prior occasions. (*Id.* at 28:23–25, 30:3–5.)

### C. Plaintiff's Experience on February 5, 2018

On February 5, 2018, Plaintiff went to her unit with her son to gather photo both items for a Valentine's Day dance at a church. (*Id.* at 35:1, 12–20.) Plaintiff and her son moved some items into the hallway, including a table, though nothing was blocking her walking path within the storage unit. (*Id.* at 38:20–23, 43:4–9.) After her son assisted her, he left, and Plaintiff remained in her unit sorting props. (*Id.* at 37:8–16.)

After Plaintiff had been in her storage unit sorting props for about twenty minutes, "the lights went out," and "it was dark." (*Id.* at 42:4–5, 42:8–11.) At first, Plaintiff thought the facility was closing, but then she recalled that the lights were motion activated. (*Id.* at 40:5–10.) Plaintiff waved her hands above her head and in front of her but the lights remained off. (*Id.* at 40:10–12.) She then remembered her daughter-in-law going into the hallway to turn on the lights and thus, she proceeded in the dark towards the hall. (*Id.* at 40:17–22.) As she was moving she hit the table that had been moved outside of the unit and slid onto her back. (*Id.* at 39:23–41:1.) She laid on the floor yelling for help. (*Id.* at 41:1–6.)

3

Brian Myers, one of Defendant's employees, saw Plaintiff laying outside of her unit. (Myers Dep. 26:9–10, ECF No. 29-4.) Plaintiff told him that she had tripped over the items on the floor, fell, and hit her shoulder. (*Id.* at 26:2–23.) She did not tell him that her unit had gone dark. (*Id.* at 28:4–5.) He called 911 and she was taken to the hospital. (*Id.* at 30:16–18.) Plaintiff suffered injuries to her left shoulder and arm. (Compl. ¶ 23–24.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III.

Plaintiff argues that Defendant's negligence in "failing to provide adequate lighting including but not limited to emergency lighting within the premises and specifically to [the] unit Defendant rented to Plaintiff proximately caused Plaintiff's injuries." (Compl. ¶ 26.) Defendant moves for summary judgment. (Def.'s Mot. Summ J., ECF No. 26.)

"In order to prove a claim of negligence, Plaintiff must demonstrate each of the following: (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Beach v. Wal-Mart Stores East Inc.*, No. 2:15-cv-1123, 2016 U.S. Dist. LEXIS 172150, at *4–5 (S.D. Ohio Dec. 13, 2016) (citing *Wallace v. Ohio Dep't of Commerce*, 773 N.E.2d 1018, 1026 (Ohio 2002). Defendant claims that "Plaintiff's negligence claim fails as a matter of law because Plaintiff can neither show that [Defendant] had a legal duty to her that was breached, or that her injury was proximately caused by [Defendant]." (Def.'s Mot. Summ. J. at 7.)

### A. Defendant's Duty to Plaintiff

A business owner owes business invitees a "duty of ordinary care in maintaining the premises in a reasonably safe condition, such that its customers are not unreasonably exposed to danger." *Beach*, 2016 U.S. LEXIS 172150 at *5 (citing *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985)); *see also Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1089 (Ohio 2003) ("A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden

dangers.") "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Beach*, 2016 U.S. Dist. LEXIS 172150 at *5 (citing *Light v. Ohio Univ.*, 502 N.E.2d 611, 612 (Ohio 1986)).

Here, Plaintiff is Defendant's invitee because she came upon Defendant's premise for a purpose which is beneficial to Defendant. *Id.* Her purpose was to access a unit for which she paid Defendant rent. This rent benefited Defendant economically. Defendant, thus, owed Plaintiff a duty of ordinary care to maintain the premise in a reasonably safe condition. *See Beach*, 2016 U.S. LEXIS 172150 at *5. Defendant claims, however, that it had no legal duty to Plaintiff when she fell on February 5, 2018, because the darkness she encountered was an open and obvious danger. (Def.'s Mot. Summ. J. at 7.)

### B. The Open and Obvious Doctrine

"When applicable . . . the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong*, 788 N.E.2d at 1090. Ohio's open and obvious doctrine "properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Id.* at 82. Importantly, "it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id.*

Open and obvious "hazards are those that are so objectively apparent that they serve their own warning and business invitees are expected to 'discover them and protect [themselves] against them.'" *Beach*, 2016 U.S. Dist. LEXIS 172150 at * 6 (citing *Sidle v. Humphrey*, 233 N.E.2d 589, 590 (Ohio 1968)). An open and obvious danger is one that is observable by a reasonable person. *Kitner v. Aldi, Inc.*, 494 F. Supp. 2d 811, 815 (S.D. Ohio July 17, 2007). However, it need not be observed by the plaintiff. *Id.*; *Goodson v. Millennium & Copthorne Hotels, PLC*, No. 1:13-cv-502,

2015 U.S. Dist. LEXIS 979, at *14–15 (S.D. Ohio Jan. 6, 2015) (quoting *Jackson v. Bd. Pike Cty Comm'rs*, No. 10CA805, 2010 Ohio App. LEXIS 4123, at *12–13 (Ohio Ct. App. Nov. 19, 2013) ("[T]he landowners duty is not to be determined by questioning whether the [condition] could have been made more perfect or foolproof' as the issue is whether the conditions that did exist were open and obvious to the person exercising reasonable care.") (internal citations omitted). "Evidence that a plaintiff actually knew of the allegedly dangerous condition can be used in evaluating the open and obvious doctrine." *Meyhew v. Massey*, 86 N.E.3d 758, 763 (Ohio Ct. App. Mar. 10, 2017).

"The question as to whether a condition is open and obvious generally is one that may be decided as a matter of law, but may, under certain circumstances be a matter to be resolved by the jury." *Goodson*, 2015 U.S. Dist. LEXIS 979 at *12–13.

Defendant claims the darkness Plaintiff encountered was an open and obvious danger. (Def.'s Mot. Summ. J. at 7.)

### C. Darkness as an Open and Obvious Condition

"Ohio courts have consistently recognized that darkness is an open and obvious condition that should not be disregarded. *Williams v. Strand Theatre & Cultural Art Ass'n*, No. 18 CAE 06 0042, 2019 Ohio App. LEXIS 96, at *8 (Ohio Ct. App. Jan. 14, 2019). To the extent that there may be a genuine issue of material fact as to the degree of darkness, summary judgment is appropriate, where if it was light enough to see the area where the plaintiff was walking then the area was an open and obvious hazard and if it was dark the darkness was observable, and thus an open and obvious hazard. *Gentry v. Collins*, No. CA2012-06-048, 2013 Ohio App. LEXIS 43, at *13–14 (Ohio Ct. App. Jan. 14, 2013).

For example, in *Meyhew v. Massey*, the plaintiff, with knowledge that her apartment building was experiencing a power outage, and without a flashlight, proceeded down a set of stairs. 86 N.E.3d at 764. The plaintiff fell and injured herself. *Id.* She claimed the lessor of the premises was negligent in not providing temporary lighting over the stairs so that the stairs would be well-lit during a power outage. *Id.* The court overruled the plaintiff's claim that the trial court erred in finding the darkness an open and obvious condition, negating the duty element. *Id.* The court noted specifically that the plaintiff knew of the power outage and chose not to utilize a flashlight. *Id.* The court also noted that "it does not matter whether the invitee had a viable alternative to encountering the open and obvious danger." *Id.* at 765 (quoting *Daher v. Nally's Total Fitness*, No. 2014-L-061, 2015 Ohio App. LEXIS 927, at *12 (Ohio Ct. App. Mar. 16, 2015)); *see also McDonald v. Marbella Rest., et al.*, No. 89810, 2008 Ohio App. LEXIS 3090, at *12–13 (Ohio Ct. App. July 24, 2008) (finding that when a plaintiff proceeded to step onto a stair despite it being dark, and fell, the darkness of the stair was an open and obvious condition absolving the defendant of liability); *Jeswald v. Hutt*, 239 N.E.2d 37, 39 (Ohio Ct. App. July 17, 168) (finding that when a plaintiff proceeded to walk across a parking lot, despite instantly realizing it was very dark, the defendant could not be found negligent.).

Similarly, in *Gentry v. Collins*, a plaintiff using a ladder in a pool at night, fell and injured her knee. 2013 Ohio App. LEXIS 43 at *3. The court affirmed summary judgment for the defendant, despite the fact that there were conflicting facts on the degree of darkness. *Id.* at *13–14. The court stated that:

> If it was light enough to see, the ladder descending the outside of the pool would have been discoverable. However, if it was not light enough to see, then the darkness itself was discernible. In either scenario, there was an open and obvious condition as [the plaintiff] was exiting the pool, absolving [the defendant] of any duty.

8

*Id.* at *14–15; *see also Leonardo v. Modene & Assocs.*, No. WD-05-085, 2006 Ohio App. LEXIS 5466, at *12 (Ohio Ct. App. Oct. 20, 2006) ("[E]ven assuming a factual question was created by [the plaintiff's] testimony regarding the lighting conditions of the hallway and room, he cannot establish a negligence claim," because if there was enough light to see he should have been able to observe the drop-off and if there was not the darkness was an open and obvious condition that he disregarded by stepping forward).

Here, Defendant owed Plaintiff no duty with regard to the darkness of the room because the darkness was an open and obvious hazard. Plaintiff testified she knew it was dark. (Clay Dep. 40:4–5.) She proceeded to walk forward despite this darkness and injured herself when she hit the table. (*Id.* at 40:23–24.) Ohio law makes clear this darkness was an open and obvious condition that alleviated Defendant's duty and thus, its negligence. *See Gentry*, 2013 Ohio App. LEXIS 43 at *13–14; *Meyhew*, 86 N.E.3d at 763; *McDonald*, 2008 Ohio App. LEXIS 3090 at *12–13; *Leonardo*, 2006 Ohio App. LEXIS 5466 at 12.

There is a factual question as to how dark it was. Plaintiff testified it was so dark she "could [not] see anything." (*Id.* at 40:24.) Defendant's employee who helped her, however, testified that when he found Plaintiff it "was not dark." (Myers Dep. 28:9.) He also testified that Plaintiff did not mention the lights had gone out when she explained to him what had occurred. (*Id.* at 26:20–23.) This factual question, however, is irrelevant. If it was light enough to see, she could have observed the table in her path and thus, the table was an open and obvious condition. If it was too dark to see, the darkness was an open and obvious condition she disregarded as she chose to walk forward. Thus, in either scenario, Defendant had no duty, and was not negligent. *See Gentry*, 2013 Ohio App. LEXIS 43 at *14–15; *Leonardo*, 2006 Ohio App. LEXIS 5466 at *12.

Plaintiff argues that the open and obvious doctrine is not applicable because Plaintiff "could not have protected herself from the danger caused by the sudden and unpredictable loss of light." (Pl.'s Mem. Contra Def.'s Mot. Summ J. at 8, ECF 29, hereinafter "Pl.'s Resp.") *Meyhew*, however, is factually similar to this case and rebuts this argument. *See*, 86 N.E.3d. The plaintiff in *Meyhew* knew the power outage had occurred and the stairs were dark. *Id.* Plaintiff testified she knew the lights were off on February 5, 2018, before she began to walk towards the hallway. (Clay Dep. 40:9–10.) The plaintiff in *Meyhew* did not utilize a flashlight or other battery-powered light. 86 N.E.3d at 764. Similarly, Plaintiff did not utilize a flashlight, light from a cell-phone, or other battery-operated light source while working in her unit, despite her knowledge that the lights were motion activated. (Clay Dep. 43:14–20.)

Additionally, the plaintiff in *Meyhew* had knowledge of the staircase. 86 N.E.3d at 761. Plaintiff in this case had knowledge that she had moved items out of her storage unit and into the space in front of her unit, including the table. (Clay Dep.43:4–13.) In *Meyhew*, the plaintiff descended a staircase in a power outage without a flashlight, ignoring an open and obvious hazard. 86 N.E.3d at 764. Here, proceeding out of a unit, in the dark, knowing items are outside of the unit, without a flashlight, constituted proceeding despite an open and obvious hazard. Further, in *Meyhew* the court specifically noted that a lack of viable alternatives does not make the open and obvious doctrine inapplicable. 86 N.E.3d at 765. Thus, the fact that Plaintiff seemingly had no viable alternatives does not give Defendant a duty.

Plaintiff also contends the case is unique, in that, unlike other cases where the plaintiffs stepped from a well-lit area into a dark area, here, Plaintiff was "thrust into darkness." (Pl.'s Resp. at 11.) This argument is unpersuasive for two reasons. First, there are factually similar cases where Ohio courts have found the open and obvious doctrine applicable. As explained above, the

facts in *Meyhew* are similar to the facts of this case. Additionally, this case is similar to *Price v. Department of Rehabilitation and Corrections*, where the plaintiff tripped on a chair because, among other reasons, the lighting was dim. No. 14AP-11, 2014 Ohio App. LEXIS 3465, at *8 (Ohio Ct. App. Aug. 14, 2014). In *Price*, the plaintiff testified he was aware of the chair's position. *Id.* at 7. As a result, the court stated that despite the dim lighting, "appellant, exercising reasonable care, should have been familiar with the position of the chair and taken steps to ensure his safety while passing it." *Id.* at 8. The same is true here, for Plaintiff testified she knew she had moved things into the space outside of her unit, and thus, is expected to have exercised reasonable caution in navigating her unit in the dark, including avoiding the items she had move into her own path.

Second, in making this argument Plaintiff has conflated the open and obvious doctrine with the "step in the dark" rule. According to the Ohio Supreme Court, when courts apply the open and obvious doctrine, "they must focus on the fact that the doctrine relates to the threshold issue of *duty*." *Armstrong*, 788 N.E.2d at 1091 (emphasis added). "By focusing on the duty prong of negligence, the rule properly considers the *nature* of the dangerous condition itself." *Id.* (emphasis added). It is the fact that "the condition itself is so obvious that it absolves the property owner" from the duty to protect against it. *Id.* On the other hand, the step in the dark rule relates to the determination of *proximate causation*. *Carter v. Forestview Terrace LLC*, 68 N.E.3d 1284, 1293–94 (Ohio Ct. App. Aug. 4, 2016). The step in the dark rule considers the plaintiff's *conduct* in encountering a dangerous condition and is useful for establishing a plaintiff's contributory negligence. *Id.* (emphasis added). Thus, on the issue of duty, the step in the dark rule is not relevant.

Finally, Plaintiff argues this case is most similar to *Carter v. Forestview Terrace LLC*, where a plaintiff was traveling down a set of stairs that had appeared well-lit when the door to the

11

staircase was open. 68 N.E.3d at 1288. However, while the plaintiff was descending, the door to the staircase closed and the staircase was suddenly dark. *Id.* Plaintiff realized only as she began to fall that the lights were out. *Id.* The court affirmed the denial of summary judgment, finding a genuine issue of material fact as to whether "the condition of the stairwell itself was so obvious that it absolved [the defendant] from taking any further action to protect [the plaintiff.]" *Id.* at 1294.

*Carter*, is distinguishable from this case in two important ways. First, the situations the plaintiffs faced are quite different. The plaintiff in *Carter* had no opportunity to appreciate the darkness and to exercise reasonable caution in deciding how to navigate it. It was a mid-step surprise that was sufficient to "divert the attention of a reasonable person" and be reasonably construed as an "attendant circumstance," thereby making summary judgment inappropriate on the issue. *Id.* Plaintiff, on the other hand, was not walking towards the hallway when the lights suddenly went out, surprising her into losing her footing. Rather, it was well after the lights went out when Plaintiff decided to walk towards the hallway in the darkness to re-activate the lights. (*See* Clay Dep. 40:2–41:1.) She had plenty of time to determine how she would proceed. (*Id.*)

Second, the importance of determining the factual dispute as to the lighting conditions when the plaintiff was injured is different here than in *Carter*. In *Carter* the plaintiff was found in darkness after she had already started descending the stairs. *Id.* at 1288. If the darkness was open and obvious than the plaintiff proceeded, despite an open and obvious hazard that the defendant had no duty to warn her about. *See id.* at 1294. If it the darkness was not open and obvious, however, then the plaintiff proceeded under conditions that a reasonable person would have thought to have been normal. *Id.* In this scenario, the defendant did have a duty to warn her of the concealed danger. *See id.* Thus, the factual dispute as to the level of darkness must be resolved.

12

Here, if the darkness was open and obvious than Plaintiff proceeded despite a known danger and the defendant did not owe her a duty. If the darkness was not open and obvious, Plaintiff proceeded with the known danger of the table in her path and the result is the same. The defendant owed her no duty. Thus, this case is unlike *Carter* and instead is similar to *Gentry* and *Leonardo* in that the factual dispute does not change whether the defendant owed her a duty because an open and obvious hazard existed either way. *See Gentry*, 2013 Ohio App. LEXIS 43 at *14–15; *Leonardo*, 2006 Ohio App. LEXIS 5466 at *12.

The Court finds Plaintiff proceeded in the face of an open and obvious condition, alleviating Defendant of any duty owed to Plaintiff. When "a property owner or occupier owes no duty to an invitee where a hazard is open and obvious, it is unnecessary to consider the issue of breach, damages, and causation." *Leonardo*, 2006 Ohio App. LEXIS 5466 at *10. Thus, there is no genuine issue of material fact that Defendant was not negligent.

### IV.

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 26). The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

12-2-2019
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

13